IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,    No. 2:09-cr-00407-KJM

 vs.

MARIA DEL ROCIO ARCEO-RANGEL,
et al.,

    Defendants.    <u>ORDER</u>

_____/

    This matter is before the court on defendant Pedro Gutierrez-Valencia's appeal of the magistrate judge's ruling on defendant's discovery motion. A hearing was held on June 5, 2013. James Greiner appeared for defendant, who was present in custody, and Samuel Wong appeared on behalf of plaintiff United States of America. All other remaining defendants join in this appeal, with counsel present as reflected in the court minutes. All other defendants also were present in custody, except for Jesus Munoz-Castanon, who has a waiver on file. For the reasons explained below, defendants' appeal is DENIED.

/////

/////

/////

/////

I. BACKGROUND

A. Evolving Law on the Status of Global-Positioning-Satellite Tracking Devices as Search or Seizure

The law with respect to the permissibility of using Global-Positioning-Satellite (GPS) tracking to monitor a suspect's vehicle without a warrant has evolved in recent years. In *United States v. McIver*, the Ninth Circuit held there was no Fourth Amendment violation when law enforcement officers installed a GPS tracker on the undercarriage of defendant's vehicle while it was parked in a driveway outside the curtilage of defendant's home. 186 F.3d 1119, 1127 (9th Cir. 1999). The court explained there was no search, because defendant had no reasonable expectation of privacy in the undercarriage of his vehicle, nor was there a seizure, because there was no evidence that the GPS tracker damaged or deprived defendant of the use of his vehicle. *Id.* at 1126-27. Following *McIver*, the Ninth Circuit in *United States v. Pineda-Moreno* [hereinafter *Pineda I*] held law enforcement's installation of a GPS tracker while the defendant's vehicle was parked in the driveway was not a violation of the Fourth Amendment, even though the government conceded the vehicle was parked in the curtilage of the home when the tracker was installed. 591 F.3d 1212, 1215 (9th Cir. 2010).

In *United States v. Jones*, however, the Supreme Court held law enforcement's use of a GPS tracker on a vehicle is a search under the Fourth Amendment because the government "physically occupied private property for the purpose of obtaining information." 132 S. Ct. 945, 950 (2012). In light of the *Jones* decision, the Supreme Court vacated the ruling in *Pineda I* and remanded the case to the Ninth Circuit for rehearing. *Pineda-Moreno v. United States*, 132 S. Ct. 1533 (2012). On remand, the government argued that at the time the agents attached and used the GPS devices, they "objectively reasonably relied" on "then-binding precedent," namely *McIver*. 688 F.3d 1087, 1090-91 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 994 (2013) (citing *Davis v. United States*, 131 S. Ct. 2419, 2423-24 (2011)). Because the government's reliance on *McIver* had been reasonable, suppression was not required. *Id.*

/////

/////

B.     Factual Background

The investigation in this case began through traditional surveillance, when a California Department of Fish and Game officer was patrolling Highway 36 in Tehama County on March 14, 2009, and saw a car stopped at an area known as the "Vista Drop Point." (Pl.'s Opp'n to Defs.' Appeal, ECF 306 at 6.) The Vista Drop Point is an official parking area next to the highway and is one half mile away from an area referred to as the "Guardrail Drop Point," a hidden area behind a guardrail that is not an official road. (*Id*. at 5.) The officer spoke to the driver of the car, defendant Erica Beatriz Martinez-Rangel, and observed a male passenger, later identified as Gutierrez-Valencia. (*Id*. at 6.) The next day, the officer and FBI Special Agent Burns went back to the Vista Drop Point and identified fresh human foot prints on nearby trails. (*Id.* at 6-7) Burns subsequently installed a 24-hour surveillance camera nearby to monitor human activity in the area. (*Id*. at 7.)

The camera recorded a tan 1999 Ford Explorer entering the Guardrail Drop point on roughly seven different occasions and also recorded a 2000 Dodge Durango approximately four times. (*Id.* at 7.) The camera revealed that the vehicles met with several Hispanic males wearing camouflage, which according to the government is commonly worn by illegal marijuana growers in order to avoid law enforcement observation. (*Id.*)

On May 18, 2009, Burns and officers from the California Department of Justice conducted physical surveillance and observed the Ford Explorer arrive at the Guardrail Drop Point. (*Id.*) When a traffic officer stopped the vehicle for speeding, the driver was identified as defendant, Gutierrez-Valencia. (*Id.* at 7-8.) Gutierrez-Valencia told the officer he was driving to Reno to return the Ford Explorer to its owner, defendant Arceo-Rangel. (*Id*. at 8.) Officers followed the vehicle to the Reno address. That night, Burns placed a GPS tracker on the vehicle while Burns was standing in a public place. (*Id.*)

The officers reviewed several weeks' worth of data from the GPS tracker, which revealed that the tracker visited the Vista and Guardrail Drop Points frequently and stopped at a Walmart in Susanville, California. (*Id.*) Burns reviewed the Walmart security video recording

/////

3

1 from that day and identified the driver of the Ford Explorer as Gutierrez-Valencia and the
2 passenger as Arceo-Rangel.  (*Id.*)

3   Defendants assert that at the time the officers planted the GPS tracking device
4 on Gutierrez-Valencia's vehicle, the officers could not have reasonably relied on *McIver* in
5 believing they were not violating Gutierrez-Valencia's Fourth Amendment rights.  (ECF 305 at
6 11-12.)  To support this argument, defendants have submitted materials from another case in
7 this district, *United States v. Frisbey*, 09-513-MCE (E.D. Cal.), in which government agents
8 acquired a warrant before installing a GPS tracker on a car during an investigation that took
9 place after the *McIver* decision was published but before *Jones* was decided.  (ECFs 283, 284,
10 285, 286, 287.)  The government argues that there is no inconsistency between the
11 government's actions in *Frisbey* and this case because installing the tracking device in *Frisbey*
12 required the government investigators to enter private property, including the curtilage of a
13 residence, and allowed the government to track the car in private areas.  (ECF 306 at 16.)  The
14 government contends defense has pointed to no case to undermine government's position that
15 warrants were requested when private space was intruded into, and not when only public space
16 was monitored.  (*Id.*)  Defendant has not responded to this argument.

17      C.      Discovery Sought

18   Defendants moved under Federal Rule of Criminal Procedure 16 and *Brady v.*
19 *Maryland*, 373 U.S. 83 (1983), for an order compelling the government to provide three classes
20 of information regarding the use of and non-use of GPS tracking devices in unrelated cases.
21 (ECF 297 at 2.)  Defendants requested: (1) the case number of all non-sealed search warrants
22 sought by the United States to attach any type of tracking device during the time period
23 between the *McIver* decision and the *Jones* decision; (2) the case numbers of all non-sealed
24 cases where any type of tracking device was used regardless of whether a search warrant was
25 sought during the time period between *McIver* and *Jones*; (3) all memoranda and writings from
26 the investigating agencies involved in this case (the Department of Justice, United States
27 Department of Interior, Bureau of Land Management, Office of Law Enforcement and Security
28 Special Agent in Charge of California, the California Department of Justice, and the United

States Attorney's Office for the Eastern District of California), regarding applications for search warrants for any type of tracking device in criminal investigations that occurred between the decisions in *McIver* and *Jones*. (*Id.*)

D. Magistrate Judge's Ruling Below

The magistrate judge denied defendants' motion, holding defendants had not met their burden of establishing the discovery requests are material to their defenses within the meaning of Rule 16 and/or *Brady*. (*Id.* at 3.) Relying on *United States v. Armstrong*, 517 U.S. 456 (1996), the court reasoned that a defendant's Rule 16 right to discovery only extends to obtaining information in the prosecutor's possession that is material to the preparation of a defense against the prosecution's case in chief, and not a defense based on a pretrial motion. (*Id.*) In *Armstrong*, the Court held that Rule 16 did not allow a defendant to obtain information about the government's history of prosecuting cocaine and firearms cases to support defendant's theory that the government selectively prosecuted black defendants for these crimes. 517 U.S. at 459, 462. The Court held that Rule 16 only pertains to discovery that would refute the government's claim that the defendant committed the crime. *Id.* at 462. The magistrate judge noted at least one court, *United States v. Feil*, No. CR 09-0863 JSW (BZ), 2010 WL 3834978 (N.D. Cal. Sept. 29, 2010), has held the relevant language from *Armstrong* is "dicta and not controlling." The magistrate judge however disagreed with the court in *Feil* because the *Armstrong* court expressly stated: "[w]e hold that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defenses against the Government's case in chief, but not to the preparation of selective prosecution claims." (ECF 297 (citing *Armstrong*, 517 U.S. at 463).) Based on the magistrate judge's determination that the relevant language from *Armstrong* is not dicta, the magistrate judge concluded that Rule 16 did not apply to defendants' request here.

II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 59(a) directs district judges to consider timely objections to nondispositive pretrial orders issued by magistrate judges and to "modify or set aside any part of the order that is contrary to law or clearly erroneous." *See also* Local

5

Rule 303(f); 28 U.S.C. § 636(b)(1)(A). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Concrete Pipe and Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623. "To succeed [on a motion for reconsideration], a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Enriquez v. City of Fresno*, No. CV F 10–0581 AWI DLB, 2011 WL 1087149, at *1 (E.D. Cal. Mar. 23, 2011). Furthermore, when filing a motion for reconsideration, a party must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." Local Rule 230(j)(3). "A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

Both parties identify the applicable standard of review as "abuse of discretion." Defendants ask the court to adopt the standard of review as articulated by the Ninth Circuit in *United States v. Stever*, 603 F.3d 747 (9th Cir. 2010). In *Stever*, the court reviewed a district court's denial of a defendant's discovery motion under Rule 16 and *Brady* for abuse of discretion. *Id.* at 752. While noting the similarity between the "abuse of discretion" standard and the "contrary to law" standard, *see* 12 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 3069 (2d ed. 2013) (discussing equivalent Federal Rule of Civil Procedure), the court declines to adopt the "abuse of discretion" standard used in appellate court review of district court decisions, in favor of the "contrary to law" standard prescribed in Rule 59(a).

Under Rule 16, a criminal defendant has a right to inspect all "documents, data, photographs, [or] tangible objects" within the government's "possession, custody, or control" that are "material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E). Evidence is

"material" under Rule 16 if it is helpful to the development of a possible defense. *United States v. Budziak*, 697 F.3d 1105, 1111-12 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1621 (2013) (citing *United States v. Olano,* 62 F.3d 1180, 1203 (9th Cir.1995)). Further, "[a] defendant must make a "threshold showing of materiality" in order to compel discovery pursuant to Rule 16(a)(1)(E). *Id.* at 1111. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* at 1111-12 (internal quotations and citations omitted).

*Brady v. Maryland* places on the prosecution an affirmative duty to produce any evidence favorable to the defendants that is material to conviction. 373 U.S. 83, 87 (1963) ("[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *see also Armstrong*, 517 U.S. at 463 ("[w]e hold that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims."). "Even if evidence is merely 'favorable to the accused,' its suppression violates *Brady* if prejudice results." *Gantt v. Roe,* 389 F.3d 908, 912 (9th Cir. 2004).

III. <u>ANALYSIS</u>

Although defendants' brief appears to argue that the materials they seek through discovery would show that Gutierrez-Valencia is actually innocent (ECF 305 at 21), defendants clarified at hearing that their argument is that the magistrate judge should have granted their discovery request because the materials would support defendants' pending motion to suppress under the Fourth Amendment. The government asserts there is no basis to exclude the evidence uncovered through the GPS tracker because at the time law enforcement officers were investigating defendants, Ninth Circuit law provided that use of a GPS tracker was not a search or a seizure under the Fourth Amendment.

Evidence obtained in violation of the Fourth Amendment is only excluded when exclusion would deter future Fourth Amendment violations. *Davis*, 131 S. Ct. at 2426. The Fourth Amendment "should not be applied . . . to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 919 (1984). The "deterrence rationale loses much of its force" when "police act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis*, 131 S. Ct. at 2428-29 (quotations and citations omitted). "[E]vidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987) (quotations and citations omitted). Accordingly, "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Davis*, 131 S. Ct. at 2429.

Defendants do not contend that the officers who installed the tracker on Gutierrez-Valencia's vehicle in 2009 acted inconsistently with Ninth Circuit law as expressed at the time in *McIver* and *Pineda I*. Instead, defendants argue that the magistrate judge should have granted their discovery request because the materials they sought would have shown that the government had sometimes requested warrants for tracking devices before the Supreme Court's decision in *Jones*. (ECF 305 at 14.) According to defendants, the fact that the agents had ever acquired warrants to use GPS trackers during this time period, while neglecting to obtain a warrant for Gutierrez-Valencia's vehicle, demonstrates that the agents did not objectively rely on *McIver* and *Pineda I*. (*Id*.)

Despite the reference in their brief to "objective" reliance, defendants' argument actually asks the court to evaluate whether the government agents subjectively believed that they were reasonably relying on judicial precedent during the investigation. However, the officers' subjective intent is irrelevant. *See Davis*, 131 S. Ct. at 2428; s*ee also Herring v. United States*, 555 U.S. 135, 145 (2009); *Whren v. United States*, 517 U.S. 806, 813-14 (1996). As defendants concede, the Ninth Circuit law at the time of the investigation allowed the agents to install the tracker on Gutierrez-Valencia's vehicle without a warrant. Accordingly, the

agents who installed the tracker had reason to believe that their actions did not violate the Fourth Amendment, meaning their behavior was objectively reasonable. The fact that agents may not have obtained warrants before installing trackers in cases with similar but distinguishable facts does not change the reasonableness of the agents' actions in this particular case; it could only show that the agents' subjective intentions varied between investigations. This is irrelevant to the analysis of whether the Fourth Amendment was violated. *See Whren*, 517 U.S. at 813-14 (declining to evaluate constitutional reasonableness of traffic stop by comparing officer's actions to "usual police practices" because it asks the Court to determine if "it is plausible to believe that the officer had the proper state of mind"). Moreover, defendants have not disputed the government's contention that agents consistently sought warrants only when seeking to install trackers on cars located in private places. (*See* ECF 306 at 21.)

Because under *Davis*, evidence obtained here through the GPS tracker device is not subject to the exclusionary rule, defendants' discovery request would not support a motion to exclude and was properly denied by the magistrate judge. As this is a sufficient reason to uphold the magistrate judge's ruling, the court therefore need not address his additional holding that *Armstrong* limits a Rule 16 motion to discovery of materials that are relevant to the prosecution's case in chief, not a pretrial motion.

Defendants' appeal is denied.

IT IS SO ORDERED.

DATED: August 8, 2013.

_____
UNITED STATES DISTRICT JUDGE