UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:09-cr-00407-KJM |
| Plaintiff, | |
| v. | ORDER |
| MARIA DEL ROCIO ARCEO-RANGEL, et al., | |
| Defendant. | |

This matter is before the court on defendants' motion to suppress evidence gained from a Global-Positioning-Satellite (GPS) tracker placed on two vehicles. The government opposes this motion. The court heard testimony at an evidentiary hearing on May 21, 2014 at which Hayes Gable appeared for Erica Martinez-Rangel; Dina Santos for Isidro Gutierrez-Valencia; Michael Bigelow for Martin Garcia-Chavez; Carl Larson for Jesus Munoz-Castanon; James Greiner for Pedro Gutierrez-Valencia and specially on behalf of John Manning for Cruz Manzo-Gonzalez; Ben Williams for Alfredo Gallardo-Sosa; Danny Brace for Gumersindo Perez-Herrera.[1] Samuel Wong, Assistant U.S. Attorney, appeared for the government. ECF No. 367. The court has considered the parties' initial briefing, the hearing testimony and the supplemental

---

[1] Defendants Cruz Manzo-Gonzalez and Alfredo Gallardo Sosa have since pled guilty to the charges and have withdrawn their joinder in the motion. ECF No. 414.

1

briefs submitted after hearing.  The court ultimately concludes, after a careful and searching review of the record and considered reading of the applicable law, that the defendants' motion should be DENIED as explained below.

I. INTRODUCTION

    A. Procedural Background

Defendants previously sought an order from the duty magistrate judge compelling the United States to provide discovery of GPS tracker information under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1983).  ECF No. 282.  This request was an attempt to establish that the investigating agents, who employed tracking devices on certain vehicles used to facilitate the crimes charged, did not objectively and reasonably rely on binding Ninth Circuit precedent in their warrantless use of the tracking devices.  The magistrate judge denied defendants' discovery motion.  ECF No. 297.

Defendant Pedro Gutierrez-Valencia initially filed the motion pending before this court on October 10, 2012, and supplemented it on September 25, 2013.  Defs.' Mot., ECF Nos. 270, 271; Supp. Mem. P.&A., ECF No. 330.  The United States filed its opposition on November 16, 2013.  Opp'n, ECF No. 331.  As noted, defendants supplemented their briefing following the evidentiary hearing.  ECF No. 404.  The government filed a supplemental opposition brief.  Supp. Brief in Opp'n, ECF No. 422.  Defendants submitted a reply to the opposition.  Supp. Reply, ECF No. 423.

    B. The Parties' Arguments

Defendants claim (1) the use of tracker devices without a warrant violates their Fourth Amendment rights, and (2) the information obtained from the devices should be suppressed under the exclusionary rule.  Mem. P. & A. in Supp. at 11, 14, ECF No. 271; Supp. Mem. P.&A. at 2, ECF No. 330.  Defendants initially asserted that when Agent Burns placed the GPS tracking devices on the Explorer and Durango in 2009, "it is the trespass by placing the warrantless tracking device on each vehicle that violates the Fourth Amendment in this case." Mem. P. & A. in Supp. at 13, ECF No. 271.  In their supplemental briefing, the defense modifies the focus of its argument, contending baldly that the Ninth Circuit has been "fundamentally

2

1 wrong" regarding the Fourth Amendment issues raised in this case; it argues the decision in
2 *McIver* was inconsistent with Supreme Court precedent even in 2009, so the agents here cannot
3 be said to have been complying with then-binding precedent. *See generally* ECF No. 404. The
4 defense further argues that because Agent Burns did not testify expressly that he had an
5 understanding of the case law at the time he placed the trackers, he could not have been acting in
6 reliance on any then-applicable law. *Id*. at 8.

7 The government contends, to the contrary, (1) law enforcement did not invade
8 private property to place the trackers but rather placed each tracker when the vehicles were on a
9 driveway accessible from public space in accordance with precedent at the time, (2) despite
10 defendants' claim, no court had held at the time that the good faith exception provided by *Davis*
11 *v. United States, infra,* does not apply where officers use a warrantless tracker device in
12 compliance with circuit precedent, and (3) no Ninth Circuit or Supreme Court case prohibited
13 attachment of warrantless tracker devices in public areas. Opp'n at 2, ECF No. 422.

14 C. Relevant Facts

15 This prosecution is related to an investigation of two roadside "drop point"
16 locations in Tehama County on California Highway 36, referred to as the "Vista Drop Point" and
17 "Guardrail Drop Point." The government suspected defendants used these two locations to drop
18 off and pick up supplies for nearby marijuana gardens on federal land, and also to drop off and
19 pick up marijuana garden workers. *See* Decl. of David Burns at 2, ECF No. 348. During pre-
20 indictment investigation, officers placed a 24-hour surveillance camera near the Vista Drop Point
21 to monitor activity. Ex. B, ECF No. 271 at 3.

22 Through surveillance between March and May of 2009, law enforcement agents
23 identified three vehicles that stopped at the drop points multiple times. The vehicles were a 1999
24 Ford Explorer, a 2000 Dodge Durango, and a 2001 Saturn. Decl. of David Burns at 2.[2] All three

---

[2] At the May 21, 2014 evidentiary hearing, the declarations of Agent David Burns and Agent Zachary Oper served as their direct examinations without objection. While Agent Burns actually placed the GPS trackers, as discussed below, Agent Oper assisted Burns in the installation and retrieval of GPS data logger trackers on vehicles investigated in this case. Decl. of Zachary Oper at 2, ECF No. 349.

1  vehicles were registered to defendant Maria Del Rocio Arceo-Rangel. *Id.* Based on the
2  surveillance footage and the belief that the Vista and Guardrail areas were being used as drop
3  points, David Burns, Special Agent with the Bureau of Land Management, installed trackers on
4  each vehicle on multiple occasions: on the Explorer on May 18, 2008, June 5, 2009, June 16,
5  2009, June 26, 2009 and July 7, 2009; on the Saturn on June 5, 2009 and June 16, 2009; and on
6  the Durango on July 16, 2009, August 4, 2009 and August 25, 2009. *Id.* at 4. Defendants request
7  the suppression of information from the trackers placed on the Explorer and Durango. Defs.'
8  Mot. at 10.

9        Agent Burns attests each car was parked in the driveway of Arceo-Rangel's
10  residence[3] each time he placed a tracker on them, such that he could attach the tracker while
11  standing on the public street. Decl. of David Burns at 4. On one occasion, when the Explorer
12  was parked in a way that Agent Burns would have had to step onto the driveway to replace the
13  tracker, he waited until the next night when he again was able to access the vehicle from the
14  street. *Id.* at 4.

15        On cross-examination, Agent Burns testified he had not read *United States v.*
16  *Pineda–Moreno,* 591 F.3d 1212 (9th Cir. 2010) or the subsequent *Pineda-Moreno* decision on
17  remand prior to the evidentiary hearing, though he recalled the case law being discussed in his
18  annual training before he retired in 2010. ECF No. 385 at 18–19. He testified he understood the
19  concept of the curtilage of a residence from "various legal courses" he attended "over the course
20  of my law enforcement career." *Id*. at 42. He testified, consistently with his declaration, that
21  while he could not remember exactly the location of the Durango and Explorer at each time he
22  placed a tracker, each vehicle was in one of the following places: the driveway, across the street
23  on the street, or on the far or near side of the street on which Arceo-Rangel lived. *Id*. at 31, 38-
24  39. Agent Burns testified to his understanding regarding the use of trackers, at the time, which
25  was that "the current law allowed us to put those on if we were in a public place," and officers

---

[3] Arceo-Rangel's address was on Monterey Shores in Reno, Nevada, and at some point during the investigation, she moved to Meadowstar Drive in Reno. Decl. of Zachary Oper at 2, ECF No. 349. Trackers were placed in both locations.

"routinely" installed them without documentation. *Id*. at 52. Agent Oper's testimony at the evidentiary hearing was consistent with that of Agent Burns: when Oper participated in the installation of trackers effected by Burns, approximately four or five times, he observed Agent Burns standing "on the street most of the time" and on one occasion, "on the sidewalk portion of the driveway." *Id*. at 69.

II.  DISCUSSION

   A.  Standing

Ms. Arceo-Rangel previously has pled guilty and is not a party to the pending motion. The vehicles registered in her name were parked at residential addresses attributed to her at the time the GPS trackers were placed. Decl. of David Burns at 4, ECF No. 348; Decl. of Zachary Oper at 2, ECF No. 349. In light of these facts, the court directed defendants to address the question of their standing to bring the motion to suppress. ECF No. 339. Defendants Erica Beatriz Martinez-Rangel, Pedro Gutierrez-Valencia, Cruz Manzo-Gonzalez, and Alfredo Gallardo-Sosa made filings in response to the court's order. *See* ECF Nos. 343-346, 350. Each of these defendants avers they drove or rode in at least one of the vehicles and resided for at least a portion of the relevant time at the residences where the vehicles were parked. *See id.*

The government does not challenge standing and the court concludes the totality of the information in the record supports defendants' standing to bring the motion. *See United States v. Jones*, __ U.S. __, 132 S. Ct. 945, 949 n.2 (2012) (noting that, although vehicle was registered to defendant's wife, the "Government has not challenged [standing][,][w]e therefore do not consider the Fourth Amendment significance of [defendant's] status [as a non-registrant of the searched car]."). *See also United States v. Davis*, 932 F.2d 752 (9th Cir. 1991) (non-owner non-resident of a home may assert standing to object to a search)*; United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011) (where GPS tracking device attached to defendant's brother's truck, DEA was investigating brother and defendant took truck, with permission, to pick up drugs leading to his stop for traffic violations, court held defendant lacked standing to challenge placement of the GPS device as a seizure, but that he did have "standing to challenge the use of the GPS device to follow the truck's path."); *cf. United States v. Pulliam*, 405 F.3d 782, 786 (9th

1  Cir. 2005) (passenger with no possessory interest in the searched car "has no reasonable
2  expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search
3  of the car").

4      B.     Applicable Fourth Amendment Law

5  The Fourth Amendment guarantees "[t]he right of the people to be secure in their
6  persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.
7  amend. IV.  The law regarding the permissibility of using GPS tracking to monitor a suspect's
8  vehicle without a warrant has evolved in recent years.  In 1999, in *United States v. McIver*, the
9  Ninth Circuit held there was no Fourth Amendment violation when law enforcement officers
10 installed a GPS tracker on the undercarriage of defendant's vehicle while it was parked in a
11 driveway, outside the curtilage of defendant's home.  186 F.3d 1119, 1127 (9th Cir. 1999).  The
12 driveway was not enclosed by a fence or gate, and was open to observations by passersby; under
13 these circumstances defendant did not establish a reasonable expectation of privacy in the
14 driveway area.  *Id*. at 1126.  The court went to find there was no search because defendant had no
15 reasonable expectation of privacy in the undercarriage of his vehicle while it was parked on the
16 driveway, nor was there a seizure, because there was no evidence that the GPS tracker damaged
17 or deprived defendant of the use of his vehicle.  *Id.* at 1126–27.

18 In 2010, the Ninth Circuit refined the privacy analysis directed to driveways, in
19 light of different facts.  In *United States v. Pineda–Moreno* (*Pineda I*), the court held law
20 enforcement's installation of a GPS tracker while the defendant's vehicle was parked in the
21 driveway was not a violation of the Fourth Amendment, even though the government conceded
22 the vehicle, parked in the driveway, was parked within the curtilage of the home when the tracker
23 was installed.  591 F.3d 1212, 1215 (9th Cir. 2010).  In *Pineda I*, the Circuit explained, a
24 driveway is only a "semi-private area."  In that case, the driveway was readily accessible to
25 individuals, had no "no trespassing" signs or "features to prevent someone standing in the street
26 from seeing the entire driveway," and defendant did not take steps to exclude the driveway from
27 passersby.  *See also Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991) ("[t]o establish a
28 reasonable expectation of privacy in [one's] driveway," and thus to obtain Fourth Amendment

6

protection for that driveway, one "must support that expectation by detailing the special features of the driveway itself (i.e. enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it.")).

Two years after *Pineda I* was decided, however, in *United States v. Jones*, the Supreme Court held law enforcement's use of a GPS tracker on a vehicle is a search under the Fourth Amendment. A vehicle qualifies as an "effect" covered by the Amendment; when the government placed a warrantless tracker on the undercarriage of defendant's vehicle parked in a public parking lot, it "physically occupied private property for the purpose of obtaining information." *United States v. Jones,* __ U.S. __, 132 S. Ct. 945, 949 (2012). In light of the *Jones* decision, the Supreme Court vacated the ruling in *Pineda I* and remanded the case to the Ninth Circuit for rehearing. *Pineda-Moreno v. United States*, __ U.S. __, 132 S. Ct. 1533 (2012).

On remand, the government argued that at the time the agents attached and used the GPS devices, they "objectively reasonably relied" on "then-binding precedent," namely *McIver*. *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012), *cert. denied*, __ U.S. __, 133 S. Ct. 994 (2013) (*Pineda II*) (citation omitted). By the time *Pineda II* was decided, the Supreme Court had decided *Davis v. United States*, on which the *Pineda II* court relied. In *Davis,* the Court found that law enforcement had "reasonably relied on binding [c]ircuit precedent" in searching a vehicle incident to arrest; only later had the Court adopted a new, more restrictive rule applicable to vehicle searches. *Davis v. United States,* __ U.S. __, 131 S. Ct. 2419, 2434 (2011) (reviewing chronology of case in lower courts before and after decision in *Arizona v. Gant*, 556 U.S. 332 (2009)). The *Davis* Court characterized law enforcement's search that complied with then-existing Circuit precedent as "that sort of blameless police conduct, we hold, comes within the good-faith exception and is not properly subject to the exclusionary rule." *Id.* Similarly, in *Pineda II*, the Ninth Circuit held suppression was not warranted where agents had acted "in objectively reasonable reliance on then-binding precedent" when they attached tracking devices to vehicles in public areas. *Id.* at 1090; *see also United States v. Thomas*, 726 F.3d 1086, 1093 (9th Cir. 2013), c*ert. denied*, __ U.S. __, 134 S. Ct. 2154 (2014) (denying

/////

7

1  exclusion when agents acted in reliance on then-binding precedent regarding "the use of a well-
2  trained narcotics-detection dog on a motor vehicle" in touching a defendant's car).

    C.     Analysis

At the time the GPS trackers in this case were installed in 2009, *McIver* was the applicable Ninth Circuit precedent, providing that a tracker may be placed on a vehicle without a warrant when the vehicle was parked in a public place. *McIver*, 186 F.3d at 1127. The defendants' certainty now that *McIver* was incorrectly decided does not strip that decision of its then-binding effect. The fact that Agent Burns did not expressly rely on published precedent in attaching the trackers is immaterial because an officers' reasonable reliance need only be "objective." *Herring v. United States*, 555 U.S. 135, 136 (2009) ("The pertinent analysis is objective, not an inquiry into the [] officers' subjective awareness."). Another judge of this court has reached the same conclusion, following *Jones*. In *United States v. Martinez*, the court considered *sua sponte* whether *Jones* applied retroactively to the facts supporting a previously denied motion to suppress information gained from a vehicle tracker; the court found it did not, because, as here, officers acted in reasonable reliance on the then-established precedent of *McIver*. *See* 2012 WL 1378491, at *2 (E.D. Cal. Apr. 19, 2012); *see also Judkins v. United States*, No. 09-CR-20, 2013 WL 1130484, at *4 (E.D. Wis. Mar. 18, 2013) (warrant requirement for GPS trackers does not have retroactive application; collecting cases nationally post-*Jones* holding the same).

Finally, taking into account the entire record before the court, defendants have not demonstrated that the trackers were placed on the vehicles while Agent Burns was on private property or invading private property. The defense has not detailed features of the driveway at issue here so as to support a reasonable expectation of privacy in that driveway, as required by Ninth Circuit precedent. In the absence of the required meaningful detail, Agent Burns' consistent and credible testimony that he placed the trackers while standing on public property and that the driveway where the vehicles were parked was fully accessible and visible from the street, resolves this matter in the government's favor.

/////

III. CONCLUSION

    Defendants' motion to suppress is DENIED.

    IT IS SO ORDERED.

DATED: March 6, 2015.

_____
UNITED STATES DISTRICT JUDGE